CASE 59—PETITION ORDINARY—SEPTEMBER 30.

# Landrum vs. Trowbridge, Dwight & Co.

APPEAL FROM FULTON CIRCUIT COURT.

1. Although the holder of a bill of exchange, payable a given number of months after its date, is not bound to present it to the drawee for acceptance until it becomes due, yet, if he does present it for acceptance, and the bill is dishonored, he is bound to give due notice to those whom he intends to hold bound for its contents.

2. A promise to pay by drawer and indorser made after a bill becomes due, is considered an admission of regular presentment for *payment*, and of due notice, or at least waives the objection that it has not been done. But if the bill has been presented for acceptance before it falls due, and dishonored, there is no inference that a party who promises to pay after the bill falls due, knew of the refusal to accept, or of the neglect to give notice of such non-acceptance. Such promise does not furnish presumptive evidence, even, of the presentment and notice.

3. A promise to pay by drawer and indorser after a bill becomes due, which had been presented for acceptance before it fell due, and dishonored, cannot be relied upon as an independent cause of action, in the absence of due notice of such dishonor, there being no consideration to uphold the promise.

T. A. MARSHALL, for appellant, cited *Taylor vs. Bank of Illinois*, 7 *Mon.; Chitty on Bills*, (*old edition,*) *side page* 213 *and* 234.

JOHN RODMAN on same side.

L. HORD, for appellees, cited 4 *B. Mon.*, 600.

J. P. METCALFE, on same side, cited 4 *B. Mon.*, 600 ; 1 *Met.*, 430 ; *Civil Code, sec.* 149 ; 4 *Dana,* 100 ; 23 *Wendell,* 381.

JUDGE WOOD DELIVERED THE OPINION OF THE COURT:

This action was commenced in the Fulton circuit court, by the appellees, the indorsees and holders of a bill of exchange,

against the appellant and another, as drawers and indorsers of said bill.

The bill, which was exhibited with the petition and filed as part thereof, was drawn in the city of New York, on the 9th day of April, 1857, on Messrs. R. Yeatman & Co. in New Orleans, and was payable twelve months after the date. It is alleged in the petition that the bill was indorsed and delivered by the appellant and another to the appellees, and that on the 17th day of April, 1857, it was duly presented *for acceptance*, and the same was refused; whereupon, it was duly protested for *non-acceptance*.

That on the 12th day of April, 1858, said bill of exchange was presented to the drawees for payment, and the same was refused; the 12th of April being the day on which the bill became due, with the three days of grace added. It is alleged that the bill was then protested for non-payment. The petition contains no allegation that notice was given to the indorsers, either of the non-acceptance or non-payment of the bill; nor is there any fact alleged as an excuse for the want of notice.

It is alleged, however, apparently as evidence of the regular presentment of the bill for payment, and of its dishonor, and that due notice thereof had been given, or at least that the parties waived the objection that the notice had not been given, and agreed still to be bound upon the bill, notwithstanding the failure to give the notice required by law, that defendants promised to pay the bill after it fell due.

And in the argument here it is now contended that the alleged promise is sufficient to show that every thing has been done necessary to make the defendant (now appellant) liable; sufficient to show regular presentment for acceptance, non-acceptance, and protest, and notice thereof, presentment for payment, non-payment, protest, and due notice of that.

The question now made was presented directly to this court in the case of *Bank of Tennessee vs. Smith*, (9 *B. Mon.*, 609.)

It was then held, that although the holder of a bill, payable a given number of months after its date, is not bound to present it to the drawee for acceptance until it becomes due, yet if he does present it for acceptance, and the bill is dishonored,

he is bound to give due notice to those whom he intends to hold bound for its contents. (*Smith vs. Roach's ex'r*, 7 *B. Mon.*, 17 ; *Taylor vs. Bank of Illinois*, 7 *Mon.*, 580 ; *Chitty on Bills*, 7 *Am. from* 7 *Lon. edition, p.* 196 ; *Story on Bills, secs.* 228, 284 ; *Bank of Washington vs. Triplett*, 7 *Con. Rep. Supreme Court*, 439.)

The court said : " A promise to pay after a bill becomes due is considered an admission of regular presentment for *payment*, and of due notice, or at least waives the objection that it has not been done. But there is a distinction between the effect of a promise to pay, in regard to the inference of notice, in cases of non-payment and non-acceptance, where a bill has been presented for acceptance before it becomes due.

" In the former case (non-payment) the party is supposed to have known when the bill became due, and must actually know, or might readily have ascertained, whether or not there had been laches ; and, therefore, the inference arises from a promise to pay of a regular presentment for *payment*, and of due notice. But in the latter case, the fact of a bill having been presented for acceptance before it falls due, and dishonored, lies peculiarly in the knowledge of the party presenting it, and there is no inference that a party who promises to pay after the bill falls due knew of the refusal to accept, or of the neglect to give notice of such non-acceptance." (*Chitty on Bills, side p.* 238, *and note of two cases, one in* 5 *Burrows, the other* 1 *Term Repts.*)

We think that the distinction taken in *Bank of Tennessee vs. Smith* was well taken. As the indorsers were not entitled to have the bill presented to the drawees for acceptance before it was due, the promise, as alleged, does not furnish presumptive evidence even of the presentment and notice. No allegation is made of actual knowledge. The promise is relied upon as raising a presumption of knowledge. And no such presumption can be allowed in a case like this, where the holder, although not bound to present the bill for acceptance, did, in fact, present it, and the drawees refused to accept it. Upon such refusal the drawers, as well as the indorsers, (and in this case they are the same persons,) were entitled to actual notice in due time, that they might withdraw their effects from the hands of the drawees, or stop any that might be going forward.

The indorsers have a right to notice, in order that they may have the opportunity of taking immediate steps for their own security.   They all have a right to be apprised of the true condition of things known to the holder.   (*Smith vs. Roach, supra.*)

In the case of *Higgins vs. Morrison's executors,* (4 *Dana,*) relied upon by the counsel of appellees, it is stated in the opinion that Higgins, who was joint indorser of the bill with Morrison, did not "place his defense on the issue of not having received *notice of protest for non-acceptance,* or suggest that he did not receive it, but placed it upon altogether different ground." And the court's conclusion was, that all the facts and circumstances of the case were sufficient to warrant the court in presuming that due notice was received, or that there was a waiver of notice, so as to charge Higgins with his proportion of the bill.

The alleged promise cannot be relied upon as independent cause of action in the absence of due notice, because there was no consideration to uphold the promise.

The statements, or allegations, of the petition, were not sufficient to show a cause of action against appellant.   His demurrer was, therefore, improperly overruled.

For the error of the circuit court in overruling the demurrer the judgment of that court *is reversed,* and the cause remanded for further proceedings in conformity with the principles of this opinion.