## CITIZENS STATE BANK OF GLENVILLE v. MINNESOTA SUGAR COMPANY.[1]

June 5, 1925.

No. 24,541.

**Agent unauthorized to borrow money on credit of principal.**

1. An agent has no power to borrow money on the credit of his principal unless expressly authorized to do so, or charged with the performance of duties which necessarily require him to do so.

**Persons dealing with agent must ascertain his actual authority.**

2. Parties dealing with him are charged with notice of such lack of power, and must ascertain for themselves the extent of his actual authority.

**Principal not liable to bank on agent's overdrafts upon his personal account.**

3. Defendant's agent had no authority, either actual or apparent, to borrow on defendant's credit, and defendant is not liable to plaintiff for overdrafts made by the agent on an account opened by him with plaintiff in his own name.

1. See Agency, 2 C. J. p. 656, § 304.
2. See Agency, 2 C. J. p. 657, § 304.
3. See Agency, 2 C. J. p. 834, § 515.

---

1. See note in L. R. A. 1916C, 112; 21 R. C. L. pp. 862, 863.

Action in the district court for Freeborn county. The case was tried before Peterson, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its

1Reported in 204 N. W. 45.

motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*Odell & Fahey*, for appellant.

*Meighen, Knudson & Sturtz*, for respondent.

TAYLOR, C.

Plaintiff is a state bank located at Glenville, Minnesota. Defendant is engaged in manufacturing sugar from sugar beets at Chaska, Minnesota. The complaint alleges that defendant had a checking account with plaintiff in 1920, and overdrew that account in the sum of $1,009.58. Judgment is demanded for that sum with interest. The answer admits that both plaintiff and defendant are corporations and denies all other allegations of the complaint. The trial resulted in a verdict for plaintiff. Defendant appeals from an order denying its alternative motion for judgment non obstante or a new trial.

Defendant made contracts with farmers by which the farmer agreed to raise sugar beets on a specified quantity of land and sell them to defendant at a specified price, and defendant agreed to buy them at that price and to advance money, as needed, for paying the laborers employed in raising them. Defendant had employes, termed fieldmen, to each of whom a specified territory was assigned. The fieldmen arranged with the farmers to grow beets and looked after and supervised planting, cultivating and harvesting them, and also secured laborers for the farmers as they were needed. When payments were to be made to the laborers, he ascertained from them and the farmers the amounts due and reported these amounts to defendant who then sent checks for the amounts so reported. Defendant also had employes, termed agriculturalists, who had control over and supervised the fieldmen.

In the early part of 1920, H. H. Dana, one of these agriculturalists, employed one E. L. Miller as fieldman for the territory which included Glenville. Miller opened the account in controversy in his own name. In June, 1920, the account was overdrawn and he gave plaintiff a note of $250 payable in 30 days. In July, 1920, the account was again overdrawn and he gave plaintiff a note for

$579.39 to cover this overdraft, payable on demand. In October, 1920, Miller left for parts unknown without the knowledge of either plaintiff or defendant and without settling his accounts with either. At the time he left, his account with plaintiff was again overdrawn. This overdraft, together with the overdrafts covered by the two notes above mentioned, constitutes the indebtedness which plaintiff seeks to recover from defendant.

Plaintiff claimed at the trial that this account, although opened by Miller in his own name and he alone had drawn checks against it, was in fact the account of defendant, but carried in Miller's name as a matter of convenience to enable him to make prompt payment of wages due laborers; and plaintiff presented testimony to the effect that Miller had so represented at the time he opened the account. The undisputed evidence, however, shows that Miller never had authority, either express or implied, to open an account for or on behalf of defendant either in his own name or otherwise.

Plaintiff also claimed at the trial and claims here that, if Miller had no actual authority to open and carry an account on behalf of defendant, he had apparent authority to do so; that plaintiff was justified in relying upon such apparent authority; and that defendant is estopped from denying liability for the overdraft. Whether this claim can be sustained is the real question presented.

That defendant had no knowledge of the existence of the account nor of Miller's dealings with plaintiff, until after Miller had disappeared, stands undisputed. Over the objection of defendant, plaintiff was permitted to introduce testimony of statements and representations made by Miller to the effect that it was the custom of defendant to carry checking accounts in local banks in the name of its fieldmen and that he had authority to carry such an account. It has long been settled that the authority of an agent cannot be established by proof of his declarations. It must be established by the declarations, acts or conduct of the principal; or by acts and conduct of the agent known to and acquiesced in by the principal, or performed under such circumstances that the principal was bound to know the powers which his agent was in fact exercising.

The authorities almost unanimously hold that an agent has no power to borrow money on the credit of his principal unless he is expressly authorized to do so, or is charged with the performance of duties which necessarily require him to do so; and that power to borrow money cannot be inferred from the fact that it will enable him to transact the business entrusted to him more conveniently or more successfully. It is a power which may have such grave consequences for the principal that it will be inferred only when indispensable in accomplishing the purpose of the agency. C. R. I. & P. Ry. Co. v. Chickasha Nat. Bank, 174 F. 923, 98 C. C. A. 535; Williams v. Dugan, 217 Mass. 526, 105 N. E. 615, L. R. A. 1916C, 110; Exchange Bank v. Thrower, 118 Ga. 433, 45 S. E. 316; Bickford v. Menier, 107 N. Y. 490,14 N. E. 438; Heath v. Paul, 81 Wis. 532, 51 N. W. 876; New York Iron Mine v. First Nat. Bank, 39 Mich. 644; Consolidated Nat. Bank v. Pacific Coast S. S. Co. 95 Cal. 1, 30 Pac. 96, 29 Am. St. 85; Merchant's Nat. Bank v. Nichols & S. Co. 223 Ill. 41, 79 N. E. 38, 7 L. R. A. (N. S.) 752; Breed v. First Nat. Bank, 4 Colo. 481; Schramm v. Liebenberg, 42 Colo. 516, 94 Pac. 345; Butts v. Ajax-Grieb Rubber Co. 169 Mo. App. 657, 155 S. W. 837; Helena Nat. Bank v. Rocky Mountain Tel. Co. 20 Mont. 379, 51 Pac. 829, 63 Am. St. 628; Swindell v. Latham, 145 N. C. 144, 58 S. E. 1010, 122 Am. St. 430; Fairly v. Nash, 70 Miss. 193, 12 South. 149; Martin v. Great Falls Mnfg. Co. 9 N. H. 51; Humphrey v. Havens, 12 Minn. 196 (298).

When Miller overdrew the account in question, he was borrowing money. He had no express authority to use the credit of defendant and, under the rules governing such matters, the power to borrow could not be implied or inferred from the nature of the business he was transacting or the manner in which it was conducted. While the power to obtain money without waiting for a remittance from defendant might have been convenient, it could not be deemed necessary within the doctrine of the cases cited. The character of the business transacted by Miller was notice that he had no authority to borrow on the credit of defendant, unless such authority had been expressly granted. We find nothing in the evidence which would justify a finding that he had apparent authority to borrow,

or a finding that defendant was estopped from denying such authority.

We have not overlooked the fact that in the preceding year another fieldman had opened such an account with another bank; and that defendant, having become aware of it, made use of the account during the remainder of the season and repaid the advances made. This single transaction could not create a custom, and has no bearing on the present case, for plaintiff had no knowledge of it when dealing with Miller. An investigation of Miller's transactions made immediately after he had gone away disclosed that he had failed to pay various claims due laborers and others. Defendant recognized liability for and paid all claims except that of plaintiff. It refused to pay plaintiff's claim, on the ground that that was a matter wholly between plaintiff and Miller with which defendant was in no way concerned.

It was incumbent on plaintiff to investigate and ascertain for itself the nature and extent of Miller's authority, and it is chargeable with notice of his lack of authority to incur the indebtedness in question on behalf of defendant. Dispatch Print. Co. v. Nat. Bank of Commerce, 109 Minn. 440, 124 N. W. 236, 50 L. R. A. (N. S.) 74; Bloomingdale v. Cushman, 134 Minn. 445, 159 N. W. 1078; Hedding v. Schauble, 146 Minn. 95, 177 N. W. 1019; Hill v. James, 148 Minn. 261, 181 N. W. 577.

The record discloses no ground upon which defendant can be held liable to plaintiff, and the order is reversed and judgment will be entered for defendant.